**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DEVANE DETRICK WRIGHT,<br><br>Defendant. | **Cause No. CR 26-02-H-BMM**<br><br>**ORDER** |

## INTRODUCTION

A federal grand jury indicted Devane Detrick Wright ("Wright") on one count of prohibited person in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(8), and one count of unlawful possession of a firearm in a school zone in violation of 18 U.S.C. §922(q)(2)(a). (Doc. 1.) Wright filed a motion to dismiss Count 1 of the Indictment (Doc. 25.) The Court held a hearing on the motion to dismiss on September 4, 2026. (Doc. 32.)

## BACKGROUND

Wright shares two children with Tahlina Evans ("Evans"). (Doc. 26 at 2.) Wright alleges that his concern about Evans's new boyfriend led him to show up at her apartment and his refusal to leave the area outside Evans's apartment. (*Id.*) Wright called Evans 40 to 70 times. (*Id.*) This conduct prompted Evans to seek an order of protection against Wright for herself and the children. (*Id.*)

Montana state court judge Judge Hannah Roe, a newly appointed Standing Master in the Montana First Judicial District, presided over the case. (*Id.* at 3.) Judge Roe found that the sheer number of calls would make a reasonable person afraid and entered the order of protection for one year starting on September 25, 2025. (*Id.*) The order provided that "Federal and State law provides penalties for possessing, transporting, shipping, or receiving any firearm or ammunition for certain persons, including the Respondent [Devane Wright]." (Doc. 25-1 at 3; Doc. 30 at 2-3.) Judge Roe entered the order of protection against Wright at a hearing at which Wright was entitled to be heard. (Doc. 25-1.) Wright alleges that no evidence exists that the order was served personally on him. (Doc. 26 at 4.)

Judge Roe later presided over a separate hearing concerning a parenting plan for Wright and Evans on November 4, 2025. (Doc. 25-3.) Judge Roe did not recall if she had been the judge who presided over the order of protection hearing. (*Id.* at 11.) Judge Roe did not know whether the order of protection covered only Evans,

or Evans and the children. (*Id.*) Judge Roe did not know when the order of protection was due to expire. (*Id.*)

Evans mentioned during the parenting plan hearing that Wright has "quite a few firearms" and that she did not personally know if the firearms were properly stored. (*Id.* at 13.) Judge Roe asked Wright if he was opposed to providing the court and Evans with proof that "any dangerous knives, medications, firearms . . . are appropriately stored and locked[.]" (*Id.* at 17.) Wright informed the court that he had four firearms in a storage unit and a firearm that he carries "on-person". (*Id.* at 18.) Judge Roe recommended Wright get a lockbox for his on-person firearm, but went on to recommend the same for knives and medications because "there's a lot of statistics on accidental deaths of kids because having access to adult items[.]" (*Id.*)

Judge Roe ordered Wright to send photos of the guns "and everything" locked up to Evans. (*Id.* at 19.) Judge Roe reiterated the directive later in the hearing: "You don't have to file the pictures with the court if you'll share them on OurFamilyWizard with her but just take pictures of the guns and stuff locked up for her peace of mind." (*Id.* at 27.) Judge Roe ordered Evans to do the same. (*Id.*) Wright confronted a man in his neighborhood with a handgun in January 2026. (Doc. 30 at 3.) Wright's armed confrontation with the man gave rise to the instant prohibited possession charge. (Doc. 1.)

The Government must show the following elements to charge Wright with a violation of 18 U.S.C. § 922(g)(8):

(1) The defendant knowingly possessed the firearm;

(2) The firearm had been shipped or transported in interstate or foreign commerce;

(3) At the time the defendant possessed the firearm, the defendant was subject to a court that,

A. Was issued after a hearing of which such person received actual notice, and at which such person had opportunity to participate;

B. Restrains such person from harassing stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

C. (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner; or
(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

(4) At the time the defendant possessed the firearm, the defendant knew he was subject to a protective order as described in the previous element.

Ninth Circuit Model Criminal Jury Instructions, 14.15.

## LEGAL STANDARD

A defendant may move before trial to dismiss a count contained in an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). The "court is bound by the four corners of the indictment" when deciding a motion to dismiss. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). An indictment

must provide a "plain, concise and definite written statement" of the essential facts constituting the offense charged. Fed. R. Crim P. 7(c)(1).

An indictment proves sufficient if it contains "the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (citation omitted). An indictment "need only set forth the essential facts necessary to inform the defendant of what crime is charged; it need not explain all factual evidence to be proved at trial." *United States v. Blinder*, 10 F.3d 1468, 1476 (9th Cir. 1993). A court must accept as true the facts alleged in the indictment when analyzing whether a cognizable offense has been charged. *Boren*, 278 F.3d at 914.

**DISCUSSION**

Wright recognizes that a pretrial motion proves proper only where the dispute involves a question of law, rather than of fact. (Doc. 26 at 6) (citing *United States v. Phillips*, 367 F.3d 846, 855 n. 25 (9th Cir. 2004)). Wright argues that the Court can rely on preliminary findings of fact and judicially noticed fact to resolve this question. (Doc. 26 at 6.) Wright's challenge arises from the fourth element of § 922(g)(8). This fourth element requires the Government to prove that Wright knew he was subject to a qualifying order of protection at the time of his armed confrontation. (*Id.* at 7-8; Doc. 31 at 1.) Wright argues that Judge Roe indisputably

endorsed his ability to possess firearms after issuing what he describes as an "ambiguous" order of protection. (Doc. 26 at 6-7.)

The Government responds that dismissing the prohibited person charge requires the Court to look beyond the "four corners" of the indictment. (Doc. 30 at 5) (quoting *United State v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).) The Government contends that the indictment properly alleges each of the elements required by the Ninth Circuit and under statute. (Doc. 30 at 7.) The Government theorizes that whether Wright can "make out an argument that he did not know he was subject to a qualifying protective order" presents a question for the jury. (*Id.* at 8.) The Court agrees.

A district court may make preliminary findings of fact necessary to decide a motion to dismiss only where the court's findings do not invade the province of the ultimate finder of fact. *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993) (quoting *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986), *cert. denied,* 478 U.S. 1007, 92 L.Ed. 2d 715, 106 S. Ct. 3301 (1986)). A motion requiring factual determinations may be decided before trial if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the offense. *Shortt*, 785 F.2d at 669 (citations omitted). Courts may judicially notice facts that are not subject to reasonable dispute. Fed. R. Evid. 201.

Wright relies on evidence within the separate parenting plan hearing record and contained in Judge Roe's order of protection to argue that he could not have known his status. (Doc. 26 at 6-7.) Wright's argument fails. The factual record does not conclusively establish that Wright did not know his status. First, even Wright describes the order of protection as being ambiguous with regard to Wright's status. (Doc. 26 at 7.) It remains unclear whether Wright would have understood the order of protection's description of "Federal and State penalties" (Doc. 25-2 at 3) to encompass Wright's status under § 922(g)(8).

Second, Judge Roe's statements during the separate parenting plan hearing did not unambiguously endorse Wright's ownership of the firearms despite the order of protection. Judge Roe admitted in the separate parenting plan hearing, two months after having issued the order of protection, that she did not recall whether she had been the judge who granted the order of protection. (Doc. 25-3 at 11.) Judge Roe did not know whether the order of protection covered only Evans, or Evans and the children. (*Id.*) Judge Roe did not know when the order of protection was due to expire. (*Id.*)

Judge Roe's advisements urged broad safety measures regarding Wright's and Evans's children. Judge Roe did not focus on the legality of firearms in Wright's possession. Judge Roe recommended providing the court and Evans proof that "any dangerous knives, medications, firearms" were appropriately

locked and stored. (*Id.* at 17.) Judge Roe required the same of Evans. (*Id.*) Judge Roe recommended Wright get a lockbox for his on-person firearm but went on to recommend securing knives and medications because "there's a lot of statistics on accidental deaths of kids because having access to adult items[.]" (*Id.*) Judge Roe later reiterated her directive that Wright should "lock up the guns and stuff" in the context of the children's visits. (*Id.* at 27.) Judge Roe did not directly address the requirements of the order of protection and the legality of Wright's possession of firearms. Judge Roe also did not address Wright's possession of firearms outside the context of the safety of the children when visiting Wright. And Judge Roe certainly did not suggest that Wright lawfully could possess a firearm when confronting a man that forms the basis for the charge in Count 1 of the Indictment. (Doc. 30 at 3; Doc. 1.)

Wright argues in his reply that Judge Roe's statements prove essential, because § 922(g)(8) proves particularly complex regarding prohibited person status. (Doc. 31 at 2.) *United States v. Rahimi*, 602 U.S. 680, 698-9 (2024), determined that § 922(g)(8)'s prohibited person status attaches only to a qualifying order where the defendant has been found to be "a credible threat to the physical safety" of another. (*Id.*) Wright asserts that Judge Roe's statements impacted whether he knew he was subject to qualifying order of protection. (Doc. 31 at 2.) The order of protection (Doc. 25-2) does not state whether Wright posed a credible

threat. Judge Roe did state in the order of protection hearing that a reasonable person would be afraid given Wright's "sheer amount of phone calls" to Evans. (Doc. 25-1 at 28.) The complex requirements of § 922(g)(8) compound the Court's reluctance to assume Wright's knowledge of his prohibited person status.

The Court recognizes the persuasive power of Wright's interpretation of *Rehaif v. United States*, 588 U.S. 225 (2019). The U.S. Supreme Court, in *Rehaif*, considered § 922(g)'s use of the term "knowingly." *Rehaif*, 588 U.S. at 227. *Rehaif* concerned a defendant who had attended university on a non-immigrant student visa. *Id.* at 227-28. The defendant was indicted after he overstayed his visa and then fired two firearms at a firing range. *Id.* at 228. *Rehaif* applied § 922(g)'s "knowingly" requirement both to the defendant's conduct in possessing a firearm and his status as a person who had overstayed their visa. *Id.* at 227. Wright therefore correctly asserts that the Government must demonstrate that Wright "'knew he possessed a firearm <u>and</u> that he knew he belonged to the relevant category of persons barred from possessing a firearm.'" (Doc. 26 at 8) (quoting *Rehaif*, 558 U.S. at 237)).

The Government correctly qualifies also § 922(g)'s "knowingly" requirement under *United States v. Singh*, 979 F.3d 697, 728 (9th Cir. 2020). The Government need not prove that Wright was "aware of and willfully violate[d] § 922(g)(8)[.]" (Doc. 30 at 2.) Wright need only be aware of his status as a person subject to

qualifying order of protection. Wright's knowledge needs not include whether his status subjected him to § 922(g)'s prohibition. *Singh*, 979 F.3d at 727. The Ninth Circuit noted that such an interpretation would raise the scienter requirement from "knowingly" to "willfully." *Id.* (citations omitted).

The Court cannot determine from the judicially available record what Wright knew regarding his status even considering *Singh*'s narrowed requirements. Wright points to significant ambiguities, including the language of the order of protection itself. (Doc. 26 at 7.) The Court declines to invade the province of the ultimate factfinder by making essential inferences between those ambiguities and Wright's knowledge. *Nukida*, 8 F.3d 665, 669 (citing *Shortt*, 785 F.2d 1448, 1452). The Court determines that a factual finding by a jury at trial represents the proper avenue to resolve the disputed fact of whether Wright knew he belonged to the relevant category of prohibited persons included in § 922(g)(8) at the time that he confronted the man with a firearm.

## CONCLUSION

The Court finds that a pre-trial motion to dismiss requires Wright to demonstrate without need for further factual findings that he lacked knowledge about his status under § 922(g). *United States v. Phillips*, 367 F.3d. at 855 n. 25. Wright cannot make such a showing. The Court concludes that Wright’s motion to dismiss Count 1 of the Indictment should be denied.

## ORDER

Accordingly, **IT IS ORDERED** that Wright's motion to dismiss the indictment (Doc. 25) is **DENIED.**

DATED this 28th day of September 2026.

Brian Morris, Chief District Judge
United States District Court